UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| MARLENE WINDEL, | ) | |
| | ) | |
| Plaintiff, | ) | 3:02-cv-00306 JWS |
| | ) | |
| vs. | ) | ORDER FROM CHAMBERS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | [Re:   Motion at Docket 65] |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 65, Marlene Windel moves for an award of attorney's fees and costs
under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).  At docket 68,
the United States of America has filed an opposition to Windel's motion.  At docket 69,
Windel has filed a reply in support of her motion.  Oral argument has not been
requested and would not assist the court.

## II.  BACKGROUND

This dispute involves six document production requests under FOIA by Windel, a
member of the Alaska Air National Guard.  The first two requests were submitted to the
Office of Public Affairs ("OPA"), Fort Richardson, on August 9 and September 27, 2001,
and asked for documents concerning Windel's training and assignments between

November of 1993 and February of 2001.[1]  She alleges, and the United States admits:

1) no response to either request was received within FOIA's twenty-day timeframe;[2]

2) the OPA sent her a letter dated December 3, 2001, stating her requests "had been

passed on for further review";[3] and 3) the Director of the Department of Defense sent

her a letter on March 22, 2002, "stating that her requests had been forwarded to the

National Guard."[4]  She also alleges, and the United States denies, she had not received

the requested documents by December 16, 2002.[5]

The next three requests were submitted to the National Guard Bureau on

November 23, 2001, and, like the first two requests, concerned her training and

assignments.[6]  Windel alleges, and the United States admits, the requested documents

were not produced within FOIA's timeframe.[7]  She also alleges, and the United States

denies, the documents had not been produced by December 16, 2002.[8]

Windel's final request was submitted on August 19, 2002, and concerned

documents relevant to a discrimination complaint she submitted on September 26,

---

[1]Doc. 16, p. 2, ¶ 5 and ex. 1-2.

[2]Doc. 16, p. 2, ¶ 7; doc. 18, p. 2, ¶ 7.

[3]Doc. 16, pp. 2-3, ¶7; doc. 18, p. 2, ¶ 7 and ex. 3.

[4]Doc. 16, p. 3, ¶ 9; doc. 18, p. 3, ¶ 9.

[5]Doc. 16, p. 3, ¶ 10; doc. 18, p. 3, ¶ 10.

[6]Doc. 16, p. 3, ¶ 12 and ex. 6-8.

[7]Doc. 16, p. 4, ¶ 15; doc. 18, p. 3, ¶ 15.

[8]Doc. 16, p. 5, ¶ 18; doc. 18, p. 4, ¶ 18.

2001.[9]  She alleges, and the United States denies, the requested documents had not been produced within FOIA's timeframe or by December 16, 2002.[10]

Windel filed suit against the United States on December 17, 2002, alleging the government violated FOIA by failing to provide final responses and produce the requested documents within the Act's timeframe.[11]  After Windel filed suit, the United States released, by its count, one hundred forty-seven documents in March of 2003 and another eighty-seven documents in August of 2003.[12]  Subsequently, on December 3, 2003, Windel filed an amended complaint acknowledging the United States's document production but alleging the production was deficient because (1) all records she requested were not submitted; (2) the submitted documents were improperly redacted; and (3) the claimed FOIA exemptions were overly broad and resulted in improper withholding of requested records.[13]

At docket 26, Windel moved for summary judgment requesting an order directing the United States to cure the alleged flaws in its document production.  She argued summary judgment was appropriate because the United States failed to present a *Vaughn* index or affidavit detailing its reasons for withholding or redacting documents. The court agreed the United States was required to submit such an index or affidavit,

---

[9]Doc. 16, p. 5, ¶ 20 and ex. 14, p. 1.

[10]Doc. 16, p. 5, ¶ 22; doc. 18, p. 4, ¶ 22.

[11]Doc. 1.

[12]Doc. 68, p. 2.

[13]Doc. 16, p. 6, ¶¶ 23-25.

concluded it had not done so, and ordered it to do so within twenty days.[14]  The United

States filed a *Vaughn* index on October 19, 2004, in which it listed sixty-nine documents

and for each document cited one or more of the disclosure exemptions under 5 U.S.C. §

552(b)(3), (5), (6) and (7)(c).[15]

　　　After the United States submitted its *Vaughn* index, Windel filed another

summary judgment motion.[16]  In its order on that motion, the court concluded the United

States's withholding under subsection 552(b)(3) was proper, but held the government

had not justified its withholding under subsections 552(b)(5), (6), and (7)(c).  The court

continued Windel's motion to allow the United States twenty days to submit the

information necessary to justify its withholding under subsection 552(b)(5), (6), and

(7)(c).  In response to the court's order, the United States released all but eight of the

withheld documents.[17]  As for the eight documents the United States continued to

withhold, the court issued an order at docket 58 in which it found the government had

not shown facts existed to support the exemptions under which they were withheld and

ordered the government to send copies of them to Windel's counsel.[18]

## III. DISCUSSION

　　　An attorney's fee award under FOIA depends on distinct concepts, eligibility, and

entitlement.  If Windel "substantially prevailed" in her action against the United States,

---

[14]Doc. 37, pp. 8-9.

[15]Doc. 38.

[16]Doc. 39.

[17]Doc. 58, p. 2.

[18]*Id.*, pp. 3-4.

then she is eligible for an attorney's fee award against the government.[19]  Her

entitlement to such an award depends on the court's consideration of factors discussed

below.[20]

**A. Windel Is Eligible for an Attorney's Fee Award**

Windel substantially prevailed in her action against the United States if "(1) the

filing of the action could reasonably have been regarded as *necessary* to obtain the

information [she sought]; and (2) the filing of the action had a *substantial causative*

effect on the delivery of the information."[21]  The United States does not contest Windel's

status as a substantially prevailing party, perhaps because that status is clear.  First, it

was necessary for her to sue to get the information she wanted.  By the date she filed

suit, it had been over a year since she submitted five of her six document requests and

the United States had not produced those documents or explained the delay in its

production.  The government's denial that it had not produced the requested documents

before Windel filed suit is undermined by its acknowledgment that it first released

documents to Windel four months after she filed suit, in March of 2003.  Second, her

lawsuit had a substantial causative effect on the release of the requested documents.  It

took a court order to force the United States to release eight documents and the

documents the government released before being ordered to do so were not disclosed

---

[19]*Church of Scientology v. U.S. Postal Service*, 700 F.2d 486, 489 (9th Cir. 1983) (citing *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979)).

[20]*Id.* (citations omitted).

[21]*Id.* (citation omitted) (emphasis in original).

until after Windel filed suit and without any explanation about why they were not disclosed earlier.

## B. Windel Is Entitled to a Partial Attorney's Fee Award

Given that Windel is eligible for an attorney's fee award, the court may, in its "sound discretion," decide she is entitled to such an award.[22]  The Ninth Circuit has set forth the following non-exclusive list of factors to guide the court's decision: 1) "the benefit to the public, if any, deriving from the case"; 2) the commercial benefit, if any, to Windel; and 3) "whether the government's withholding of the records sought had a reasonable basis in law."[23]

In an earlier order, the court expressed its frustration with the parties for failing to explain what underlying concerns provided the foundation for this litigation.[24]  Unfortunately, neither party has taken the opportunity provided by the latest round of briefing to make a serious effort to enlighten the court.  The United States argues Windel's goal was "to establish thorough [sic] the disclosed information that she was wrongfully discharged, and is entitled to money damages."[25]  Regrettably, the United States does not support that allegation with any evidence.  However, Windel's papers tend to support the proposition that she sought the records to vindicate her own interests: "Windel's interest in the records is twofold: First, the records pertain to her

---

[22]*Id.* at 492 (citations omitted).

[23]*Id.* (citations omitted).  Another factor suggested by the circuit court, "the nature of [Windel's] interest in the records sought," is "construed together" with the second factor.  *Id.* at 493-94 (citation omitted).

[24]Doc. 44, p. 5.

[25]Doc. 68, p. 5.

evaluation as a member of the National Guard.  Second, the records relate to her claims

that she was discriminated against."[26]  In her reply memorandum, Windel suggests the

sought-after records shed light on gender discrimination in the Alaska National Guard.

She has submitted several documents indicating discrimination may have occurred,[27]

but those documents do not show the extent of the alleged problem and whether it is

ongoing or remedied.  This court's reading of the submitted papers suggests that

problems involving gender discrimination may have already been remedied, although

that is not entirely clear.[28]  Given the continued mystery surrounding this case, the court

is unable to determine its benefit to the public.  However, Windel's candid assertions in

her opening memo clearly implicate her own pecuniary interests.  Consequently, the

court concludes the first factor cannot be assessed, but the second factor weighs

somewhat against an attorney's fee award.  As for the third factor, the United States

had a reasonable basis in law for withholding information under subsection 552(b)(3)

but not under subsections 552(b)(5), (6), and (7)(c).  This factor weighs somewhat in

favor of an award with respect to the documents withheld under subsections 552(b)((5),

(6), and (7)(c).  Windel points to the failure of the United States to produce a *Vaughn*

index until ordered to do so by the court as a matter which should be considered.  The

United States' failure to voluntarily produce the *Vaughn* index has not been explained.

---

[26]Doc. 65, p. 5.

[27]*See* exhibits submitted at Doc. 69.

[28]*E.g.,* the statement by Msgt. Applegate at p. 000419 attached to doc. 69 suggests both that the problem has been cured, and that there remain pockets where the problem persists.

The requirement has been clear in this circuit for well over ten years.[29]  The failure to comply with the requirement delayed some of the relief Windel sought and increased her cost of securing compliance.

The United States does not contend that the amount of the fees sought by Windel is unreasonable, only that she is not entitled to an award.  The court also finds that the fee request is reasonable, but also concludes that an award of the full amount of fees is not appropriate.  Taking into account all of the circumstances of the litigation, the court concludes that an award of twenty percent of the actual attorney's fees is appropriate.

### C. Alaska Rule of Civil Procedure 82 Does Not Apply

As an alternative basis for awarding attorney's fees, Windel points to Alaska Rule of Civil Procedure 82.  However, that rule would apply only if Alaska law were the basis for her claim.  It is not.  Rule 82 provides no basis for an award of attorney's fees in this case.

### IV.  CONCLUSION

For the reasons set out above, the motion at docket 65 is **GRANTED** in part: Windel shall recover the sum of $4,077.51 from the United States.

DATED at Anchorage, Alaska, this 19th day of April, 2006.

/s/
HON. JOHN W. SEDWICK
UNITED STATES DISTRICT COURT JUDGE

---

[29]*Weiner v. F.B.I.,* 943 F.2d 972, 977 (9th Cir. 1991).

-8-